**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LETICIA VALDES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-0051 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 13, 16 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

DENYING THE PLAINTIFF'S MOTION TO ALTER OR AMEND THE INTERLOCUTORY
ORDER AND GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S
MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

**I.   INTRODUCTION**

This matter comes before the court on the plaintiff's motion to alter or amend the court's interlocutory order,[1] which granted in part and denied in part the defendant's motion to dismiss, and the plaintiff's motion for leave to file a third amended complaint. With respect to the plaintiff's motion to alter or amend the interlocutory order, the plaintiff alleges that her counsel inadvertently failed to supply the court with vital evidence that supports the plaintiff's successful exhaustion of administrative remedies for her claim of failure to make her employment position permanent. Because the proffered evidence does not change the court's conclusion that the plaintiff failed to exhaust her administrative remedies, the court denies the plaintiff's motion to alter or amend its interlocutory order. With respect to the plaintiff's motion to amend her

---

[1] While the plaintiff styles her motion as a motion to vacate and/or reconsider the court's order granting in part defendant's motion to dismiss and requests relief from judgment under Federal Rule of Civil Procedure 60(b), the court treats it as a motion to alter or amend interlocutory order or judgment pursuant to Rule 54(b). *See infra* Discussion III.A.

complaint, the court, in its discretion and in the interest of justice, grants her request to amend her complaint to resurrect the claim that she was wrongfully terminated. Because the plaintiff's claim of failure to make her position permanent would not survive a motion to dismiss, rendering amendment on this ground futile, the court denies the plaintiff's request to amend her complaint regarding this claim.

## II.   BACKGROUND

### A.   Factual History

On July 6, 1998, the defendant hired the plaintiff, who is of Cuban origin, as a grade 12 attorney for the Child Support Enforcement Legal Service Section ("CSELSS") of the District of Columbia Office of the Attorney General ("DCOAG").[2]  Mem. Op. (April 15, 2005) ("Mem. Op.") at 2. Two months after being hired, the plaintiff began serving on a temporary basis as the Acting Assistant Section Chief, a grade 14 position. *Id.* Despite requests to her supervisors to make her position permanent, the plaintiff served as Acting Assistant Section Chief for more than four years notwithstanding her temporary status and unchanging wages. *Id.*

On September 13, 2002, the plaintiff alerted Joe Perry, the director of the CSELSS, and her supervisor, Luis Rumbaut, by e-mail, of a problem with the company that conducted genetic testing for the CSELSS. *Id*. The plaintiff accused the genetic testing company of fraud and incompetence and requested assistance from her supervisors in addressing the situation. *Id*. The Washington Post obtained the plaintiff's e-mail as part of a Freedom of Information Request and

---

[2]   The District of Columbia Office of Corporate Counsel ("DCOCC") has changed its name to the District of Columbia Office of the Attorney General ("DCOAG"). Pl.'s Opp'n to Mot. to Dismiss at 1 n.1.

the e-mail was subsequently published.  *Id.*

On September 17, 2002, the position of Section Chief for the CSELSS became vacant. *Id*.  The requirements in the vacancy announcement fluctuated; some announcements required only attorneys who had served as a grade 14 attorney for at least a 12 month period, while others allowed grade 13 attorneys to apply.  *Id*.  On November 18, 2002, the DCOAG issued an order naming Andrea Comentale, a grade 13 attorney, as the new Chief of the CSELSS.  *Id*.

On March 11, 2003, the plaintiff received an evaluation completed by Rumbaut for the plaintiff's performance for the September 1, 2001 to August 31, 2002 period.  *Id.* at 3.  Without forewarning, the plaintiff received a performance evaluation which recommended that the plaintiff attend stress management and managing multiple priorities training.  *Id.*  As a result, the plaintiff developed a Performance Management Plan,[3] which her supervisor at the time, Andrea Comentale, approved.  *Id.*  Soon after the plaintiff began implementing her plan, Comentale and another supervisor, June Mickens, told Ms. Valdes to seek a less expensive training curriculum. *Id.*  On May 21, 2004, Corporation Counsel Robert Spagnoletti, Deputy Corporation Counsel Eugene Adams, Chief of Staff Michael Haley, Child Support Director Benidia Rice, and Chief of Operations & Litigation of the CSE Division June Mickens convened a meeting with the plaintiff and Comentale.  At this meeting, the foregoing people notified the plaintiff and Comentale that they would be removed from their respective positions.  *Id*.

---

[3]   The plaintiff states that chapter 36 of the District Personnel Manual requires employees to develop a yearly individual accountability plan consisting of training courses, including courses based on the performance evaluations that employees had received for their rating period.  Mem. Op. (Apr. 15, 2005) at 3.

### B.     Procedural History

On December 9, 2002, after being passed up for the promotion to Section Chief of the CSELSS, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that the District did not promote her to the position due to discrimination based on national origin. *Id*. On that same day, the plaintiff swore an affidavit detailing her complaint that the defendant had failed to promote her. Included was a statement that "[d]uring the past four years, in 1999 and September 2001, I asked [DCOAG] to place me in full capacity in my position with the benefits involved with it." Pl.'s Mot. to Alter or Amend Interloc. Order ("Pl.'s Mot. to Alter"), Attach. 1 (Pl.'s Aff.) at 1.

On April 23, 2003, the plaintiff amended her EEOC complaint to include the charge of retaliation as an additional discriminatory reason that the DCOAG failed to promote her. Mem. Op. at 4. Specifically, the plaintiff claims that the defendant retaliated against her because the Washington Post obtained and published the e-mail discussing the genetic testing company. *Id*.

On October 15, 2003, the plaintiff received her right to sue letter for her allegations of failure to promote due to discrimination on the basis of national origin and retaliation. *Id*. On January 13, 2004, the plaintiff commenced the instant suit claiming national origin discrimination and retaliation for failure to promote her and for failure to make her temporary position permanent. *Id*. On June 14, 2004, the plaintiff filed her second charge with the EEOC, alleging unlawful termination. *Id*.

Back in the courthouse, on June 21, 2004, the plaintiff filed her second amended complaint to include her termination claim. *Id*. On May 26, 2005, the plaintiff filed a motion to alter or amend the court's interlocutory order, which granted in part and denied in part the

defendant's motion to dismiss. The next day, the plaintiff filed a motion for leave of court to file a third amended complaint to include her termination claims and failure to make her position permanent claims. The defendant did not file an opposition to either of these motions. The court now addresses each motion in turn.

### III.   ANALYSIS

#### A.   The Plaintiff's Motion to Alter or Amend the Interlocutory Order

#### 1.   Legal Standard for Altering or Amending an Interlocutory Order or Judgment

A district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); *see also Muwekma Tribe v. Babbitt,* 133 F. Supp. 2d 42, 47-48 (D.D.C. 2001); *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000). The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure

59(e)[4] and 60(b).[5]  Relief from interlocutory orders and judgments is available under the standard, "as justice requires." *Childers,* 197 F.R.D. at 190 (citing FED. R. CIV. P. 60(b) Advisory Comm. Notes).

Furthermore, while the law of the case doctrine does not automatically apply to interlocutory decisions, *Langevine v. Dist. of Columbia*, 106 F.3d 1018, 1022-23 (D.C. Cir. 1997), the court maintains its underlying rationale as applicable.  That doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  "[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Id*.  The law of the case doctrine, however, "is not an inexorable command that rigidly binds a court to its former decisions but rather is an expression of good sense and wise

---

[4]  Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*per curiam*)).

[5]  Under Rule 60(b) courts may grant relief from judgments for: (1) mistake, inadvertence, surprise, or excusable neglect/newly discovered evidence that the moving party could not have discovered through its exercise of due diligence; (2) newly discovered evidence that the moving party could not have discovered through its exercise of due diligence; (3) fraud, misrepresentation, or other misconduct by the adverse party, but such must have prevented him from fully and fairly presenting his case and that fraud is attributable to the other party or his counsel; (4) void judgments (i.e., the court lacked personal or subject matter jurisdiction in the case, acted in a manner inconsistent with due process, or proceeded beyond the powers granted to it by law); (5) judgments that have been satisfied released or discharged or when there has been a material change in the controlling law used in reaching that judgment, or when it is no longer equitable that the judgment should have prospective application; and finally; and (6) any reason justifying such relief.  FED. R. CIV. P. 60(b); *Lepkowski v. Dep't of Treasury*, 804 F.2d 1310, 1311-12 (D.C. Cir. 1986).

judicial practice." *Melong v. Micronesian Claims Comm'n*, 643 F.2d 10, 17 (D.C. Cir. 1980) (quoting *Carpa v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir. 1978)); *see Messinger v. Anderson*, 225 U.S. 436, 444 (1912) (noting that the law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power"); *Virgin Atlantic Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (stating that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again").  Given the good sense of this doctrine, nothing prevents the court from applying the rationales of the law of the case doctrine to guide a Rule 54 decision.  *Virgin Atlantic Airways*, 956 F.2d at 1255 (holding that "[e]ven if Rule 54(b) allows parties to request district courts to revisit earlier rulings, the moving party must do so within the strictures of the law of the case doctrine").

> The court is mindful that
>
> [a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Christianson*, 486 U.S. 800 at 817 (quoting *Arizona*, 460 U.S. at 618 n.8).  The advisory notes to Rule 60(b) guides that "interlocutory judgments are . . . left subject to the complete power of the court rendering them to afford such relief from them as justice requires."  FED. R. CIV. P. 60(b) Advisory Comm. Notes.  Finally, the D.C. Circuit has confirmed that pursuant to the district court's plenary powers, it may review and amend interlocutory decisions when it is "consonant with equity."  *Schoen v. Wash. Post*, 246 F.2d 670, 673 (D.C. Cir. 1957); *see also Childers,* 197 F.R.D. at 190.

**2.     The Court Denies the Plaintiff's Motion to Alter or Amend the Interlocutory Order**

On April 15, 2005, the court dismissed with prejudice the plaintiff's claim of failure to make her employment position permanent because she failed to exhaust her administrative remedies and it was, moreover, time-barred. Mem. Op. at 7-9. The plaintiff argued that her successful exhaustion of her administrative remedies for her failure to promote claim renders her exhaustion successful for her failure to make her position permanent claim by virtue of her contention that they are reasonably related. *Id.* at 8. The court rejected this argument. *Id*. at 7-9. The plaintiff now argues that she exhausted her administrative remedies regarding her failure to make her position permanent claim independently, that is, without reliance on a relation to her failure to promote claim. Pl.'s Mot. to Alter at 1-2. The plaintiff supports this contention with an affidavit that she submitted to the EEOC on December 9, 2002. Pl.'s Mot. to Alter at 1. This evidence comes before the court now, as opposed to when the court was considering the defendant's motion to dismiss, due to the plaintiff's counsel's professed inadvertence. *Id*. at 1. The affidavit states, in relevant part, that "[d]uring the past four years, in 1999 and September 2001, I asked [DCOAG] to place me in full capacity in my position with the benefits involved with it." Pl.'s Aff. at 1.

The plaintiff may present this claim in her complaint if it could have been expected to be a part of a reasonable EEOC investigation stemming from the formal charges she actually filed. *Park v. Howard Univ.*, 71 F.3d 904, 907 (citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (holding that a Title VII lawsuit following an EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations"). But the lone sentence the plaintiff relies on to save her claim

does not allege discrimination for any reason, lacks sufficient facts to support an investigation, is the first sentence in a paragraph wholly unrelated to DCCOC's failure to make the plaintiff's position permanent, and most importantly, does not as much as state how the DCOCC responded to these requests.  The court, and presumably the EEOC, is left to infer that her request for a permanent assignment was denied, that such a denial was the product of discrimination, and that the plaintiff was requesting an investigation of this denial.  Because this single sentence was insufficient to put the EEOC on notice, the court concludes that the plaintiff's one-sentence reference to her requests for permanent placement as Assistant Section Chief is insufficient to establish that a reasonable EEOC investigation should have included this claim as well.

The court's analysis here is analogous to that of the D.C. Circuit in *Marshall v. Fed. Express Corp.*, 130 F.3d 1095 (D.C. Cir. 1997).  In *Marshall*, the plaintiff acknowledged that her administrative complaint failed to put the EEOC on notice of her imminent termination, but she, like Ms. Valdes, also claimed that the accompanying affidavit "did the trick."  130 F.3d at 1098.  Ms. Marshall's affidavit foreshadowed her future termination in clear terms and in two separate phrases.  *Id.* (stating that "[Opal] was in the process of terminating me," and adding, "I feel as if I am being given the run around, and I will be terminated soon").  The *Marshall* court held that these references to possible events did not amount to a request for an EEOC investigation, and thus the plaintiff failed to exhaust her administrative remedies.  *Id.*  In the instant case, Ms. Valdes's affidavit also fails to state what actually occurred, namely whether she was promoted to a permanent position and if not, why.  *See* Pl.' Aff. at 1.  Because the plaintiff's claim fails to state facts or allegations that indicate a possible claim of discriminatory

employment practices, this court finds no equitable reason to vacate its prior order dismissing the plaintiff's claim of failure to make her temporary employment position permanent. Accordingly, the court denies the plaintiff's motion to alter or amend the interlocutory order.

### B. The Plaintiff's Motion for Leave to File a Third Amended Complaint

#### 1. Legal Standard for a Motion for Leave to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. FED. R. CIV. P. 15(a). Additionally, Rule 15(a) allows a party to amend its pleading to add a new party.[6] *Id.*; *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 (D.D.C. 1994); 6 FED. PRAC. & PROC. 2d § 1474. According to our court of appeals, Rule 15(a) "guarantee[s] a plaintiff an absolute right" to amend the complaint once at any time so long as the defendant has not served a responsive pleading and the court has not decided a motion to dismiss. *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282-83 (D.C. Cir. 2000) (citing FED. R. CIV. P. 15(a)). If there is more than one defendant, and not all have served responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer. 6 FED.

---

[6] A motion to amend a complaint to add a party may also implicate Federal Rules of Civil Procedure 20 and 21, the joinder rules. *Oneida Indian Nation v. County of Oneida*, 199 F.R.D. 61, 72 (N.D.N.Y. 2000). Once a responsive pleading has been served, however, the standard for adding a party is the same regardless of the rule under which the motion is made: the decision lies within the discretion of the court. *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 n.29 (D.D.C. 1994) (stating that "[i]t is well established that after a responsive pleading has been served, the standards for adding parties are the same whether the motion is made under Rule 15 or Rule 21"); *Oneida Indian Nation*, 199 F.R.D. at 72 (noting that "in practical terms there is little difference between [Rules 15, 20, and 21] in that they all leave the decision whether to permit or deny amendment to the district court's discretion"); 6 FED. PRAC. & PROC. 2d § 1474 (indicating that "the same basic standard for adding or dropping a party will apply whether the pleader moves under Rule 15(a) or Rule 21").

PRAC. & PROC. 2d § 1481.  Motions to dismiss and for summary judgment do not qualify as responsive pleadings for the purposes of Rule 15.  *James V. Hurson Assocs.*, 229 F.3d at 283; *Bowden v. United States*, 176 F.3d 552, 555 (D.C. Cir. 1999); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 399 (D.C. Cir. 1990).

Once a responsive pleading is served, however, a plaintiff may amend the complaint only by leave of the court or by written consent of the adverse party.  FED. R. CIV. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The grant or denial of leave lies in the sound discretion of the district court.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  The court must, however, heed Rule 15's mandate that leave is to be "freely given when justice so requires."  *Id.*; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083 (D.C. Cir. 1998).  Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman*, 371 U.S. at 182.  Denial of leave to amend therefore constitutes an abuse of discretion unless the court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments.  *Id.*; *Caribbean Broad. Sys.*, 148 F.3d at 1083.

Denial of leave to amend based on futility is warranted if the proposed claim would not survive a motion to dismiss.  *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  An amended complaint is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.  *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002) (quoting 3 Moore's Federal Practice § 15.15[3] (3d ed.

2000)); *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming the district court's denial of leave to amend given the "little chance" that plaintiff would succeed on his claim).

### 2. The Court Grants in Part and Denies in Part the Plaintiff's Motion to Amend her Complaint

On April 15, 2005, the court dismissed two of the plaintiff's claims, namely, (1) her claim of wrongful termination, which the court dismissed without prejudice; and (2) her claim of failure to make her position permanent, which the court dismissed with prejudice. Mem. Op. at 7-11. The plaintiff now seeks to amend her complaint to resurrect both of these claims. From the outset, the court notes that it looks to Rule 15(a) and 54(b) for guidance regarding a motion to amend the complaint to reinstate claims that the court previously dismissed by way of an interlocutory decision. *Fantasia v. Office of the Receiver of the Comm'n on Mental Health Services*, 2002 U.S. Dist. LEXIS 27609 at *8-9 (D.D.C. Mar. 11, 2002) (stating that "[a]fter a district court dismisses certain defendants or claims with prejudice, those defendant[s] or claims can be reinstated through the vehicle of an amended complaint only if the plaintiff is also entitled to relief from the judgment or order"); *see also Cassell v. Michaux*, 240 F.2d 406, 408 (D.C. Cir. 1956).

#### a. The Court Grants the Plaintiff Leave to Amend her Complaint to Include a Claim of Wrongful Termination

On April 15, 2005, the court dismissed without prejudice the plaintiff's wrongful termination claim because she had not exhausted her administrative remedies. Mem. Op. at 10-11. The plaintiff now seeks to amend her complaint to reinstate this claim alleging that she has since exhausted her administrative remedies. Pl.'s Mot. to Amend at 1. While the plaintiff

states that the defendant does not consent to the motion, *id*. at 2, the defendant did not file an opposition. Applying the standards set forth in Rule 54(b) and 15(a), the court, in the interests of justice, permits the plaintiff to amend her complaint to reinstate her alleged administratively exhausted claim of wrongful termination.

### b. The Court Denies the Plaintiff Leave to Amend her Complaint to Include a Claim of Failure to Make her Position Permanent

On April 15, 2005, the court dismissed with prejudice the plaintiff's claim of failure to make her position permanent because it is time-barred. Mem. Op. at 7-10. The court reconsidered this issue based on additional evidence and concluded that the plaintiff's proffered evidence was insufficient to persuade the court, pursuant to Rule 54(b), to alter or amend its interlocutory decision dismissing this claim with prejudice. *See* discussion *infra* Part III.A. The plaintiff additionally asks the court to permit her to amend her complaint to include this claim that has been twice adjudicated as meriting dismissal with prejudice. The plaintiff's request is denied for a third time because when an amended complaint would not survive a motion to dismiss, it is within the discretion of the court to declare it futile and deny the plaintiff leave to amend. *See Henderson v. Stanton*, 1998 U.S. App. LEXIS 30884, 6-7 (D.C. Cir., 1998); *see also James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (1996). Here, the plaintiff's claim survived neither a motion to dismiss nor a motion to alter or amend an interlocutory decision. Allowing the plaintiff to amend her complaint to include this claim would be futile; accordingly, the court denies the plaintiff's request. *Id*.

### III.  CONCLUSION

For all the foregoing reasons, the court denies the plaintiff's motion to alter or amend the interlocutory order and grants in part and denies in part the plaintiff's motion for leave to file a third amended complaint.[7] An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 18th day of August 2005.

RICARDO M. URBINA
Unites States District Judge

---

[7]  The court notes that the defendant did not file an opposition to either of the plaintiff's pending motions.  If an opposing party fails to file a memorandum of points and authorities in opposition to a motion within 11 days of the date of service of the original motion, the court may treat that original motion as conceded.  LCvR 7(b).  The enforcement of such a rule falls squarely within the discretion of the district court.  *Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997).  Because the plaintiff's motion to alter or amend judgment and motion for leave to file a third amended complaint involve issues this court has already ruled on, the court exercises its discretion to decline enforcement of this rule.  The court, however, reminds the parties that it is no stranger to this rule and has, in its discretion, treated many motions as conceded based on the opposing parties' silence.  *See, e.g.*, *Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56 (D.D.C. 2003), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004).